FILED
2/27/20 9:09 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 18-22124-GLT |
| **DONALD R. CENK**, | Chapter 13 |
| *Debtor*. | |
| **DONALD R. CENK**, | |
| *Movant*, | Related to Dkt. Nos. 161, 165 |
| v. | |
| **MICHELLE L. CENK**, | |
| *Respondent*. | |

Donald R. Calaiaro, Esq.  
David Z. Valencik, Esq.  
Calaiaro Valencik  
Pittsburgh, PA  
*Attorney for the Donald R. Cenk*

Michelle Cenk  
Cranberry Township, PA  
*Pro Se*

Owen Katz, Esq.  
Office of the Chapter 13 Trustee  
Pittsburgh, PA  
*Attorney for the Chapter 13 Trustee*

## MEMORANDUM OPINION

In the face of a contested confirmation hearing prompted by, among other things, allegations that he concealed and undervalued assets and underreported his income, Donald R. Cenk (the "Debtor") seeks to exercise his "absolute right" to dismiss his chapter 13 case, admitting his inability to fund a plan.[1] His estranged wife, Michelle Cenk, opposes dismissal, arguing that

---

[1] *Amended Motion to Dismiss*, Dkt. No. 161 (the "Motion to Dismiss").

the Debtor is trying to avoid the consequences of his allegedly fraudulent conduct.[2] For the reasons set forth below, the Court must grant the *Motion to Dismiss*.

**I.    BACKGROUND**

The record in this case is sparse, especially with respect to the Debtor's income and assets. As the sole owner of Cenk Chiropractic LLC,[3] the Debtor is a high-earning individual who has been making plan payments in excess of $6,000 per month since May 2018. Exactly how high-earning is unclear, as the only *Schedule J* filed in this case reflects a monthly net income deficit of $1,407.10.[4] The full extent of the Debtor's assets is also in question. Ironically, Ms. Cenk previously moved to dismiss the case for bad faith, alleging that the Debtor failed to disclose certain assets as well as transfers made to insiders within a year of the petition date on his schedules. Although that motion was scheduled for an evidentiary hearing, one never took place because Ms. Cenk subsequently filed a chapter 7 petition and the trustee of her estate (the "Chapter 7 Trustee") withdrew the motion, preferring instead to pursue her claims in the Debtor's chapter 13 case. The Debtor ultimately amended his schedules and statement of financial affairs, revealing a cash sale of real property in Florida six months prior to the petition date and the transfer of substantial proceeds from that sale to his brother and girlfriend.[5] Still, questions persist.

The Debtor filed a chapter 13 plan that largely provided for the payment of secured creditors, various taxing authorities, and Ms. Cenk's domestic support claim, with an estimated dividend to general unsecured creditors, including Ms. Cenk (on account of any final property

---

[2]    *Response to Motion*, Dkt. No. 165 (the "Response).

[3]    *Schedule A/B: Property*, Dkt. No. 17 at 6.

[4]    *Schedule J: Your Expenses*, Dkt. No. 17 at 27-28.

[5]    See Dkt. Nos. 104 and 106.

2

settlement), of only $6,500.⁶ The Chapter 7 Trustee objected to confirmation, asserting that the plan failed the best interests test because it ignored the substantial value of his life insurance policy, the avoidable preferential and fraudulent transfers to his brother and girlfriend, and the unaccounted for balance of the Florida sale proceeds.⁷ After a preliminary confirmation hearing, the Court scheduled the matter for an evidentiary hearing and afforded the parties 60 days for discovery. Days after discovery closed, however, the Debtor filed the *Motion to Dismiss*, conceding his inability to fully fund a plan and emphasizing his "absolute right" to dismiss.⁸ Only Ms. Cenk filed a response in opposition.

At the hearing on the *Motion to Dismiss*, the Debtor admitted that dismissal would result in the loss of any preference claims, but suggested that all interested parties have adequate remedies under state law. For her part, Ms. Cenk essentially argued in favor of conversion to chapter 7, asserting that the Debtor "has carried out [the] entire bankruptcy . . . in bad faith and therefore has forfeit[ed] his right to dismiss . . . ."⁹ The chapter 13 trustee indicated that she too would support conversion, noting the potential recovery for unsecured creditors. Yet the chapter 13 trustee did not file any such motion, relying on an unpublished decision by this Court, *In re Pennington*, which held that a chapter 13 debtor's right to dismiss trumps a motion to convert.¹⁰ Even so, she signaled a willingness to brief the issue if the Court would entertain it. No party requested an evidentiary hearing.

---

⁶     *Chapter 13 Plan dated July 12, 2019*, Dkt. No. 144.

⁷     *Objection to Confirmation of Chapter 13 Plan dated July 12, 2019*, Dkt. No. 148.

⁸     The amount of case law cited by the Debtor in support of a chapter 13 debtor's absolute right to dismiss is notable given his contention that a confirmable plan is simply not feasible.

⁹     *Response*, Dkt. No. 165 at ¶ 29.

¹⁰    See In re John S. Pennington, Case No. 16-22914-GLT, Dkt. No. 106.

3

Given the parties' reference to an unpublished decision of this Court, and recognizing that the bar would benefit from a more robust explanation of the Court's views on this subject, the Court took the matter under advisement. Because the chapter 13 trustee declined to file a response to the *Motion to Dismiss*, the Court will not permit her to jump into the fray at this stage.[11]

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III.   DISCUSSION

Chapter 13 proceedings are voluntary endeavors. Indeed, it is generally recognized forcing chapter 13 upon debtors against their will, and thus compelling payments to creditors under a plan, would likely amount to involuntary servitude in contravention of the Thirteenth Amendment to the U.S. Constitution.[12] To ensure the volitional nature of chapter 13, the Bankruptcy Code includes several structural safeguards.[13] In the first instance, a chapter 13 case

---

[11]   Preservation of an argument requires, at a minimum, a response raising the issue and indicating that but for the Court's prior decision, a party would have acted differently. The Court understands that the chapter 13 trustee's posture was influenced by a prior unpublished decision of this Court and her belief that the pertinent legal issues were settled. Admittedly, a written decision in one case, whether published or not, is usually a good indication of how the Court will react to the same question of law in a subsequent case. Regardless, aggrieved parties generally have the option to challenge such rulings before this Court and on appeal.

[12]   U.S. CONST. amend. XIII, § 1; see, e.g., In re Clemente, 409 B.R. 288, 291 (Bankr. D.N.J. 2009); In re Armstrong, 408 B.R. 559, 570 (Bankr. E.D.N.Y. 2009); In re Higginbotham, 111 B.R. 955, 963 (Bankr. N.D. Okla. 1990).

[13]   Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

may only be commenced voluntarily,[14] and a creditor or trustee may not convert a pending case to chapter 13 without the debtor's consent.[15]  Only a chapter 13 debtor may file a plan.[16]  Finally, to free debtors from chapter 13, section 1307(b) affords them a statutory right to dismiss the case:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, *the court shall dismiss* a case under this chapter.[17]

Notably, the phrase "shall dismiss" implies that a debtor's right to voluntarily dismiss a chapter 13 case that has not been previously converted is not subject to the court's discretion.[18]

Though the concept of an "absolute right" to dismiss would appear perfectly appropriate for the "honest but unfortunate debtor"[19] in a voluntary proceeding, it has troubling ramifications when debtors act in bad faith.  The classic exemplar of the problem is the debtor who conceals substantial income or assets in an effort to secure a chapter 13 discharge on the cheap, only to jump ship and avoid any undesirable consequences once the bad faith is discovered.  The idea that a court is powerless to address such a clear abuse of the bankruptcy system is counterintuitive at best and illogical at worst.

The peculiarity of this result is even more apparent given that section 1307(c) allows the court, at the request of a party in interest and for cause shown, to convert a chapter 13 case to chapter 7 if "in the best interests of creditors and the estate."[20]  Chapter 7, after all, may be

---

[14]    See 11 U.S.C. § 303(a) ("an involuntary case may be commenced only under chapter 7 or 11 of this title").

[15]    See 11 U.S.C. §§ 706(c), 1112(d).  There is no express provision of chapter 12 that addresses conversion to chapter 13.

[16]    11 U.S.C. § 1321.

[17]    11 U.S.C. § 1307(b) (emphasis added).

[18]    Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) (recognizing that "[t]he word 'shall' is ordinarily the language of command") (internal quotation marks omitted).

[19]    Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991)

[20]    11 U.S.C. § 1307(c).  The Court also may convert a chapter 13 case to chapter 7 *sua sponte* pursuant to section 105(a). See In re Pustejovsky, 577 B.R. 671, 676 (Bankr. W.D. Tex. 2017); In re Waring, 555 B.R. 754, 758 (Bankr. D. Colo. 2016); In re Kazis, 256 B.R. 242, 244 (Bankr. D. Mass. 2000); see also Hammers

foisted on a debtor involuntarily at any time. For this reason, there is significant disagreement at the circuit level about whether a debtor's right to dismiss under section 1307(b) is truly absolute. The United States Court of Appeals for the Second Circuit has held that a chapter 13 debtor "has an absolute right to dismiss a Chapter 13 petition under § 1307(b), subject only to the limitation explicitly stated in that provision," underscoring the unambiguously mandatory command—*shall dismiss*—compared to the permissive "may" used in section 1307(c) [21] In contrast, the United States Courts of Appeal for the Fifth, Eighth, and Ninth Circuits have all held that a debtor's right to voluntarily dismiss a chapter 13 case is qualified by an implied exception for bad faith conduct or abuse of the bankruptcy system.[22]

Courts adopting a more qualified view of section 1307(b) find support in *Marrama v. Citizens Bank of Massachusetts*, where the Supreme Court of the United States held that a chapter 7 debtor proceeding in bad faith forfeits the right to convert to chapter 13.[23] The case involved the archetypal debtor previously referenced. After the chapter 7 trustee discovered that the debtor's schedules contained inaccurate statements that effectively concealed the estate's interest in valuable assets, the debtor sought to convert his case to chapter 13 pursuant to section 706(a).[24] The trustee and creditors opposed conversion, arguing that the debtor's bad faith would

---

v. I.R.S. (In re Hammers), 988 F.2d 32, 34 n.7 (5th Cir. 1993) ("We do not think that 11 U.S.C. § 1307(c), when read in harmony with section 105(a), precludes *sua sponte* dismissal upon suggestion of ineligibility.").

[21] Barbieri v. RAJ Acquisition Corp. (In re Barbieri), 199 F.3d 616, 619 (2d Cir. 1999).

[22] See Jacobsen v. Moser (In re Jacobsen), 609 F.3d 647 (5th Cir. 2010); Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764 (9th Cir. 2008); Molitor v. Eidson (In re Molitor), 76 F.3d 218 (8th Cir. 1996).

[23] Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

[24] Id. at 368-69. Section 706(a) provides in relevant part:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.

11 U.S.C. § 706(a).

render such relief an abuse of the bankruptcy process. The bankruptcy court agreed and denied the request. On appeal, the Supreme Court concluded that section 706(d), which prohibits conversion "unless the debtor may be a debtor under [the proposed] chapter,"[25] provided adequate authority to deny the debtor's conversion to chapter 13. Noting that bankruptcy courts treat bad faith conduct as grounds for dismissal or conversion of a chapter 13 case under section 1307(c), the Supreme Court reasoned that

> [i]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.[26]

In closing, the Supreme Court further observed:

> [T]he broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.
>
> Indeed, . . . the inherent power of every federal court to sanction "abusive litigation practices," . . . might well provide an adequate justification for a prompt, rather than a delayed, ruling on an unmeritorious attempt to qualify as a debtor under Chapter 13.[27]

The United States Court of Appeals for the Third Circuit has yet to confront the issue head on. Instead, it held that regardless of whether a chapter 13 debtor's right to dismiss is absolute, the bankruptcy court at least has discretion to address bad faith conduct by restricting

---

[25] 11 U.S.C. § 706(d).

[26] Marrama v. Citizens Bank of Massachusetts, 549 U.S. at 374–75.

[27] Id. at 374-76 (footnotes omitted).

7

future filings.[28] Nevertheless, relevant case law exists within this district. In *In re Taylor*,[29] Judge Fitzgerald followed the Fifth Circuit's decision in *Jacobsen v. Moser*,[30] concluding that "*Marrama* made it clear that bankruptcy courts are vested with the authority to take appropriate action in response to an abuse of process."[31] Accordingly, she found that the bankruptcy court had the discretion under section 105 to deny a chapter 13 debtor's request for dismissal in favor of a creditor's motion to convert "to prevent an abuse of process."[32]

Since *Taylor* was decided, however, the Supreme Court has issued rulings that would seem to chip away at its at its foundation. In *Law v. Siegel*, the Supreme Court held that a bankruptcy court's inherent powers under section 105 do not empower it to surcharge a debtor's exemption for "egregious misconduct," reasoning that bad faith is not a justification to deviate from an express statutory directive.[33] Notably, the Supreme Court also cautioned against an expansive reading of *Marrama*'s statements about section 105 or the bankruptcy court's inherent powers:

> At most, *Marrama*'s dictum suggests that in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code. *Marrama* most certainly did not endorse, even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code.[34]

---

[28]   In re Ross, 858 F.3d 779, 784-85 (3d Cir. 2017)

[29]   In re Taylor, 462 B.R. 527 (Bankr. W. D. Pa. 2011), aff'd sub nom. Taylor v. Winnecour, 460 B.R. 673 (W. D. Pa. 2011).

[30]   In re Jacobsen, 609 F.3d at 661.

[31]   In re Taylor, 462 B.R. at 532.

[32]   Id. at 534 (internal quotation marks omitted).

[33]   Law v. Siegel, 134 S. Ct. 1188, 1195-97 (2014) ("§ 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate").

[34]   Id. at 1197.

A year later, in *Harris v. Viegelahn*, the Supreme Court highlighted a chapter 13 debtor's non-waivable right to convert a case to one under chapter 7 "at any time" under section 1307(a), noting that neither a motion nor court order are required to render the conversion effective.[35]

Against this backdrop, this Court determined in *Pennington* that a debtor's statutory right to dismiss a chapter 13 case cannot be abridged by bad faith, even in the face of a motion to convert to chapter 7. The plain language of section 1307(b) mandates dismissal of the bankruptcy case upon the debtor's request in unequivocal terms that are even more definitive than those considered by the Supreme Court in *Marrama*, *Siegel*, and *Harris*. While the Court would appreciate the discretion to handle an array of factual circumstances differently, particularly to prevent abuse of the bankruptcy system, the existence of such discretion is doubtful. Thus, although the *Pennington* decision is (in the Court's estimation) legally sound, it is also disconcerting, leading the Court to opt against publication. But until a higher court rules otherwise, the Court is inclined to follow it in the future.

That said, the Court queries whether there is ever room for a different result. Is it too literal to read "shall dismiss a case *under this chapter*" to mean that section 1307(b) requires dismissal over conversion under section 1307(c) if both are pending simultaneously? Arguably, conversion to chapter 7 is not inconsistent with permitting a debtor to voluntarily exit chapter 13 or the policies underlying that rule. It is also curious that Bankruptcy Rule 1017(f)(2) would require a motion to be filed under section 1307(b) if the court must grant it without regard to any response or objections.[36] If nothing else, it is an acknowledgment that dismissal is not instantaneous or self-effectuating. Moreover, *Marrama* still hangs heavily over this issue. While

---

[35]   Harris v. Viegelahn, 135 S. Ct. 1829, 1835-36 (2015).

[36]   Fed. R. Bankr. P. 1017(f)(2). Admittedly, a creditor could raise a prior conversion as a meritorious objection to a motion to convert under section 1307(b).

9

*Siegel* described *Marrama* as "dispens[ing] with futile procedural niceties in order to reach more expeditiously an end result *required by the Code*,"[37] that rationale does not address the fact that had the case been converted to chapter 13, the debtor conceivably could have dismissed it before it could be reconverted to chapter 7 based on his ineligibility. Perhaps the recognition in both *Marrama* and *Siegel* that bad faith conduct can render a debtor not "qualified" for chapter 13 relief provides a subtle answer to this question.[38] If an ineligible debtor does not have an absolute right to dismiss under section 1307(b), *Marrama*'s reconversion under section 1307(c) would, in fact, be the "end result required by the Code."[39] Drawing this out further, if a debtor's bad faith preceded the chapter 13 petition or was concurrent with it, as might be the case with filing knowingly inaccurate schedules, is it possible that the debtor would not be "qualified" to be a chapter 13 debtor *ab initio* and therefore not have an absolute right to dismiss? Ultimately, these are questions for another day.

In the present case, the Court has no facts before it that would permit, let alone compel, a result other than dismissal. Even assuming bad faith matters in this context, there is no evidence in the record to support a such a finding. While accusations of wrongdoing have dogged the Debtor throughout this case, no one has sought to prove them despite several opportunities to do so. For this reason, the Court discerns no basis to impose future filing restrictions on the Debtor.

---

[37] Law v. Siegel, 571 U.S. at 426 (emphasis added).

[38] Law v. Siegel, 571 U.S. at 425; Marrama v. Citizens Bank of Massachusetts, 549 U.S. at 374–75.

[39] Law v. Siegel, 571 U.S. at 426.

### IV. CONCLUSION

In light of the above, the Court will grant the *Motion to Dismiss*. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: February 26, 2020

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor
Donald R. Calaiaro, Esq.
David Z. Valencik, Esq.
Owen Katz, Esq.
Michelle Cenk